UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JUSTIN HOWELL, <br><br> Plaintiff <br><br> v. <br><br> CITY OF AUSTIN, <br><br> Defendant. | CAUSE OF ACTION: <br><br> 1:21-cv-00749 |

# PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Justin Howell brings this 42 U.S.C. § 1983 case against the City of Austin for the brutal and excessive force it inflicted on him as he was peacefully exercising his right to assemble and protest and doing absolutely nothing wrong.

## I. PARTIES

1. Plaintiff Justin Howell is a resident of Travis County, Texas.

2. Defendant CITY OF AUSTIN, is a municipality that operates the Austin Police Department and may be served through its City Clerk at 301 W. 2nd Street, Austin, TX 78701. The City's policymaker for policing matters is Police Chief Brian Manley. *Service is hereby requested at this time.*

## II. JURISDICTION AND VENUE

3. As this case is brought pursuant to 42 U.S.C. § 1983, this Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

4. This Court has general personal jurisdiction over Defendant as they reside and/or work in Travis County, Texas.

5. This Court has specific *in personam* jurisdiction over Defendant because this case arises out of conduct by Defendant that injured Plaintiff Howell, and which occurred in Travis County, Texas, which is within the Western District of Texas.

6. Venue of this cause is proper in the Western District pursuant to 28 U.S.C. § 1391(b)(1) because a substantial portion of the events or omissions giving rise to Plaintiff's claims occurred in Travis County, which is within the Western District of Texas.

### III. FACTS

7. Black lives matter.

8. Howell is Black.

9. On May 31, 2020, Howell went downtown to participate in a demonstration against police brutality following the police killings of George Floyd and Michael Ramos.

10. Howell posed no threat to anyone.

11. Howell was doing nothing that could conceivably be perceived as threatening to anyone.

12. Howell was completely and totally innocent.

13. Howell was unarmed.

14. Howell made no suspicious movements that could conceivably lead officers to believe that he was armed.

15. Despite this, an APD officer inexplicably, unconscionably, and unreasonably shot him in the head with a potentially lethal projectile – a so-called "less lethal" "beanbag" round fired from a shotgun.

16. The projectile hit Howell's head.

17. As a consequence, Howell fell to the ground and suffered a traumatic brain injury. The projectile immediately – and to this day – caused Howell to suffer significant physical pain, mental anguish, impairment, and disfigurement.

18. As Howell lay on the ground bleeding and brain damaged, not a single APD officer came to his assistance.

19. When courageous individuals at the protest attempted to carry Howell to an ambulance, an APD officer shot one of the people trying to help him, a young woman named Maredith Drake.

20. The officer that shot Maredith Drake was Chance Bretches, who was indicted in Travis County on a first-degree felony charge of Aggravated Assault by a public servant, Serious Bodily Injury with a Deadly Weapon for conduct that occurred before the protests. The City knew that Bretches had brutally beaten a suspect months earlier, repeatedly punching him in the head and face, but did nothing to discipline him, and instead armed him with a "less lethal" beanbag shotgun and allowed him to shoot at non-violent demonstrators.

21. Upon information and belief, officers who shot at Howell also had pending Internal Affairs investigations when they fired the "less lethal" beanbag rounds at him.

22. Despite watching APD officers shoot the completely innocent Howell and a civilian medic trying to help him, and despite watching countless others shoot other innocent defenseless people at the protest, no APD officer did anything to stop officers from exercising this patently unreasonable force

23. When he finally arrived at the hospital, Howell underwent emergency brain surgery and had to spend weeks fighting for his life in the Intensive Care Unit.

24. Though he survived, Howell suffered terribly and his brain was significantly damaged.

25. Tragically, Howell was just one of many innocent people APD officers used excessive force against on May 30 and May 31 who were doing nothing more than attending an event protesting police violence against Black people.

26. In fact, on May 30, 2020, APD officers used grotesque excessive force numerous times, seriously injuring several people with "bean bag" shotgun rounds, and otherwise attacking innocent demonstrators who did nothing more than exercise their free speech and assembly rights. Among others, APD's victims from May 30, 2020 included Jason Gallagher, Saraneka Martin, Levi Ayala, Bomani Barton, Steven Arawn, Gemicah Volter-Jones, Meredith Williams, Nicole Underwood, and Joe Herrera.

27. Police force against Ayala was not justified by any facts known to APD or its officers.

28. Police force against Gallagher was not justified by any facts known to APD or its officers.

29. Police force against Martin was not justified by any facts known to APD or its officers.

30. Police force against Barton was not justified by any facts known to APD or its officers.

31. Police force against Arawn was not justified by any facts known to APD or its officers.

32. Police force against Volter-Jones was not justified by any facts known to APD or its officers.

33. Police force against Williams was not justified by any facts known to APD or its officers.

34. Police force against Underwood was not justified by any facts known to APD or its officers.

35. Police force against Herrera was not justified by any facts known to APD or its officers.

36. While numerous people had been injured by APD, including several who had suffered serious injuries (including head injuries) from "beanbag" shotgun rounds fired by APD on May 30, 2020, rather than correct this unconstitutional behavior by his officers, of which he, Mayor Adler, City Manager Kronk, and several City Council members were made aware of, Chief Manley

and his senior leadership permitted APD to continue firing kinetic projectiles dangerously from "beanbag" shotguns at innocent people and into crowds on May 31, 2020 as well.

37. As a consequence, in addition to Howell, numerous other innocent, defenseless individuals were shot in the head or face and seriously injured with projectile "beanbag" shotgun rounds on May 31, 2020. Among others, these include Anthony Evans, Annette Chavez, Christen Warkoczewski, and Samuel Kirsch

38. Evans was also doing absolutely nothing wrong and was shot in the face with a projectile fired by APD.

39. Police used force against Evans that was not justified by any facts known to APD or its officers.

40. Police force against Chavez was also not justified by any facts known to APD or its officers. Yet she was shot in the back of the head as well.

41. And the force used against Christen Warkoczewski – shooting her in the head as she ran away – was not reasonable and not justified by any facts known to APD or its officers.

42. After seriously injuring Howell, an APD officer even shot a civilian medic, Maredith Drake, with a projectile "beanbag" shotgun round while she had her hands up and was simply trying to get the severely injured Howell to safety.

43. Police used force against Drake that was not justified by any facts known to APD or its officers.

44. Upon information and belief, when APD shot Howell and the others, the officers were substantially motivated by their opposition to the demonstrators' message that police violence must end.

45. Likewise, upon information and belief, APD also shot Howell because he was Black.

46. In fact, APD Officers have engaged in a long pattern of employing excessive force against unarmed people of color over the last several years.

47. Among others, these include (but are by no means limited to) force used against Jesus Hernandez, Pete Hernandez, Sir Smith, Carlos Chacon, and Braion King, as well as the killings of David Joseph, Larry Jackson, Jr., Kevin Brown, Byron Carter, Ahmede Bradley, Jason Roque, Nathan Sanders, Daniel Rocha, and Michael Ramos. All of the preceding were unarmed when APD officers assaulted or killed them.

48. In fact, a 2016 study by the Center for Policy Equity found that APD disproportionately used force against people of color.

49. During this same time period, a high-ranking APD commander, Justin Newsom, who is white, regularly used invidious racial slurs. Among many other disgusting comments, Newsom referred to former President Barack Obama as "n----- one," to a former Black city councilwoman as a "dumb n-----," and to a former Black assistant police chief as "a n-----, but our n-----." When Newsom's disgusting comments came to light, rather than discipline him, Chief Manley quietly allowed him to resign.

50. Chief Manley did this despite acknowledging that he believed Newsom did make racist comments.

51. Further indicative of APD's failure to remedy its discriminatory practices is a 2020 analysis of city traffic data that found that Black motorists comprise 25% of APD's arrests despite representing only 8% of its population.

52. In any event, APD's shooting of Howell with a kinetic projectile "beanbag" was objectively unreasonable and shocks the conscience.

53. Moreover, the attack on Howell would chill a person of ordinary firmness from continuing to engage in protected speech and assembly.

54. Numerous APD officers watched the officer shoot Howell, but not one officer intervened to stop the outrageous shooting, just as no one intervened to stop the prior shootings. In fact, at least one other officer fired at the people trying to help Howell after he was struck in the head and seriously injured.

55. After he was shot, Howell underwent emergency surgery, and was hospitalized in the ICU, during the COVID-19 pandemic, for three weeks while he recovered.

56. No officer has been disciplined by APD for using excessive force against Howell or for shooting individuals in the head with kinetic projectiles fired from shotguns. Likewise, neither Chief Manley nor any of the shooting officers, nor any of those officers supervisors, have been disciplined for tolerating, authorizing, or endorsing this type of despicable and unconstitutional conduct.

57. This lack of discipline as to senior leaders and Manley himself is all the more shocking as Chief Manley agrees that Justin Howell was a victim of unjustifiable force by APD on May 31.

58. Moreover, APD Chief of Police, Brian Manley, adopted policies that authorized or tolerated this unreasonable, unnecessary and brutally excessive force even though Chief Manley had long known of the dangers of firing projectiles into crowds and at innocent and defenseless persons, and was actually aware that bean bag rounds fired from shotguns had been unreasonably used multiple times on May 30, 2020 and multiple times again on May 31, 2020 prior to the attack on Howell. Despite this, and Manley's awareness of the severe injuries caused by "beanbag" shotgun rounds, APD policies – and Manley – authorized their continued use.

7

59. Likewise, APD had a long-standing policy of paramilitary training for its officers to act as "warriors," and see conflict with members of the public as inevitable as part of an "us vs. them" culture. Officers were trained to be "indifferent to the community," according to a report commissioned by the City.

60. APD's training academy taught cadets – who later became APD officers – to act as if they were at war with the community they were supposed to be protecting. In one incident, an academy instructor told cadets that if "anyone here says they want to be a police officer to 'help people,' I will punch you in the face."

61. Another instructor told cadets to "pick someone out of a crowd, and ask yourself, 'how could I kill that person?'"

62. A report commissioned by the City found that officers were trained to see "the Austin community [as] the enemy."

63. Unsurprisingly, the report further found that "the culture of a police training academy reflects the culture of a department and impacts the mindset and approach to policing." The report concluded that the City must provide "training for handling protests with non-militaristic approaches."

64. Chief Manley knew, as any reasonable policymaker would also know, that as a direct and proximate consequence of such practices, innocent people like Howell would be seriously injured and victimized, and their constitutional rights violated.

65. As a direct and proximate result, numerous other people suffered severe and devastating injuries as a result of APD's practices and excessive force on May 30, 2020 and May 31, 2020 – before Howell was senselessly shot.

66. According to Dell Seton Medical Center's physicians, seven victims required surgical interventions and four victims retained portions of the "beanbag" shotgun rounds in their bodies/heads.

67. More particularly, victims suffered intercranial hemorrhages, depressed skull fractures, depressed frontal bone fracture, fractured jaws and brain damage.

68. Upon information and belief, Manley knew that APD had inflicted this type of serious injury on innocent demonstrators before his officer shot and critically injured Howell.

69. After ignoring the pattern of excessive force that preceded the attack on Howell for several more days, multiple members of the City Council called for Manley to be removed as APD's Chief of Police.

70. Following the calls to remove him, Chief Manley acknowledged the obvious: the policies at Austin Police Department concerning the use of "beanbag" shotguns were dangerously flawed and he agreed to change them – a change any reasonable policymaker should have known to have made prior to Howell being shot and seriously injured.

71. The injury Howell suffered is substantial.

72. Howell suffered greatly while at the hospital and experienced terrifying delirium. Following his lengthy stay in the ICU, Howell spent another three weeks in a rehabilitation facility – where his brain injury and its effects were evaluated and documented.

73. Tragically, Howell's brain injury will impair him for the rest of his life.

## IV. CAUSES OF ACTION

**The City of Austin directly and through its practices caused Plaintiff's rights to be violated and caused him to suffer serious injuries.**

74. At least one Austin Police Department Officer, while acting under color of law, used excessive force that shocks the conscience on Justin Howell when he posed no danger to anyone.

75. This use of force shocks the conscience, was wholly excessive to any conceivable need, and was objectively unreasonable. Therefore, Defendant's employee violated Plaintiff's rights under the Fourth and Fourteenth Amendments.

76. As a direct and proximate result, Howell suffered and continues to suffer significant injuries.

77. Likewise, the First Amendment's protections for free speech and assembly prohibit agents of the government from subjecting an individual, like Howell, to retaliation for engaging in protected speech rights.

78. Howell exercised his free speech and assembly rights by attending the demonstration against police violence.

79. Upon information and belief, the officer's use of force against Howell was substantially motivated by his disagreement with the content of Howell' speech. Upon information and belief, the officer shot Howell with the beanbag shotgun substantially because the officer disagreed with Howell's right to assemble and/or his protected speech.

80. In addition, Howell was yet one more unarmed person of color senselessly injured by APD's long-standing pattern of using excessive force against people of color on May 30 and May 31. Among others from that weekend alone, these include Saraneka Martin, Levi Ayala, Bomani Barton, Anthony Evans, Anette Chavez, and Joe Herrera.

81. Moreover, Defendant City of Austin had the following policies, practices, or customs in place when an APD Officer unreasonably shot Plaintiff Howell:

    a. Shooting kinetic projectiles into crowds where innocent people could be injured;

    b. Shooting people in the head with kinetic projectiles;

    c. Using, authorizing, and/or tolerating excessive force against non-violent protestors;

    d. Failing to adequately discipline officers;

    e. Failing to adequately supervise officers;

    f. Allowing officers with pending Internal Affairs investigations to use "less lethal" beanbag shotguns as crowd control devices;

    g. Failing to adequately train officers concerning de-escalation of force, crowd control, use of force against non-violent protestors, and the use or misuse of kinetic projectiles;

    h. Failing to train officers regarding demonstrators' free speech and assembly rights;

    i. Not intervening to stop constitutional violations, including but not limited to retaliation, conduct that shocks the conscience, and excessive force;

    j. Failing to train or instruct officers about specific incidents it considers unreasonable, excessive force, or in violation of the Constitution;

    k. Training officers to act as paramilitary "warriors," and creating an "us vs. them" culture where officers were "at war" with the community they were supposed to be serving, which encouraged officers to use excessive force;

    l. Disproportionately using and tolerating excessive force, including deadly force, against unarmed people of color; and

    m. Using munitions that are dangerous or expired.

82. Each of the policies, practices, or customs delineated above was actually known, constructively known and/or ratified by City of Austin and then Chief of Police, Brian Manley, and was promulgated with deliberate indifference to Howell's First, Fourth and Fourteenth Amendment rights under the United States Constitution. Moreover, the known and obvious consequence of these policies, practices, or customs was that Austin Police Department officers would be placed in recurring situations in which the constitutional violations described within this complaint would result. Accordingly, these policies also made it highly predictable that the particular violations alleged here, all of which were under color of law, would result.

83. Consequently, the policies delineated above were a moving force of Plaintiff's constitutional deprivations and injuries, and proximately caused severe damages.

11

84. Moreover, Chief Manley and senior level APD superiors knew that multiple officers had violated individuals' right to speech and assembly and had used excessive force at the protests the day before and earlier on May 31. As a consequence of them not stopping the abusive tactics, they caused numerous people to suffer serious injuries. Thus, they condoned and ratified the abuse. Moreover, the City and its leadership, including Chief Manley, is aware through court findings, litigation, reports commissioned by the City, video footage, and investigations of a pattern of racism and disproportionate and excessive force used against minorities by APD officers. Accordingly, the City is also liable directly for its policymakers' misconduct and failure to adequately supervise, train, and stop APD officers from using excessive force and violating protestors' first amendment and equal protection rights, which was a proximate cause of Plaintiff's deprivation of rights and injuries.

85. Manley failed to supervise the officer that shot Howell and by authorizing, encouraging, and failing to stop officers from engaging in reckless police tactics like firing "beanbag" shotgun rounds into crowds of non-violent demonstrators, and the other above delineated policies, all of which caused the violation of Howell's constitutional rights. Manley was deliberately indifferent to the known and obvious consequences of these policies, practices, and customs which he was aware of, authorized, and encouraged, rather than acting to correct them. Manley was actually aware of facts from which any reasonable policymaker could draw the inference that a substantial risk of serious harm and violations of constitutional rights existed, and actually drew that inference. Manley was aware of the pattern of similar incidents that occurred before and after Howell's serious injuries, although it was also apparent and obvious that a constitutional violation was a highly predictable consequence of the City's above delineated policies.

86. Likewise, Manley knew or should have known that training his officers it was acceptable to fire "beanbag" shotgun rounds into crowds of nonviolent demonstrators, among the other dangerous policies delineated above, were particular omissions in the City's training program that would cause City employees to violate the constitutional rights of members of the public they encountered, like Howell. Nevertheless, though Manley knew of these obvious deficiencies, and even the serious injuries they caused the day before, he chose to retain this dangerously flawed training program and did nothing to correct his officers despite knowing that demonstrations would continue on May 31, 2020.

87. Plaintiff Howell brings this claim pursuant to 42 U.S.C. § 1983.

## V. DAMAGES

71. Plaintiff Howell seeks the following damages:

   a. Past and future medical expenses

   b. Past and future economic damages, including (but not limited to) loss of earning capacity;

   c. Past and future physical pain and mental anguish;

   d. Past and future impairment;

   e. Past and future disfigurement; and

   f. Attorneys' fees pursuant to 42 U.S.C. § 1988.

## VI. PRAYER FOR RELIEF

72. To right this injustice, Plaintiff requests the Court:

   g. Award compensatory damages against the City of Austin,;

   h. Award Plaintiff costs and fees, including but not limited to expert fees and attorneys' fees, pursuant to 42 U.S.C. § 1988;

   i. Award pre-judgement and post-judgment interest at the highest rate allowable under the law; and,

j.  Award and grant such other just relief as the Court deems proper.

Dated: August 26, 2021

Respectfully submitted,

**EDWARDS LAW**
1101 East 11th Street
Tel.  512-623-7727
Fax.  512-623-7729


By /s/ *Jeff Edwards*
JEFF EDWARDS
State Bar No. 24014406
jeff@edwards-law.com
SCOTT MEDLOCK
State Bar No. 24044783
scott@edwards-law.com
MIKE SINGLEY
State Bar No. 00794642
mike@edwards-law.com
DAVID JAMES
State Bar No. 24092572
david@edwards-law.com
PAUL SAMUEL
State Bar No. 24124463
paul@edwards-law.com